**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

| | |
|---|---|
| AMY WELCH,<br><br>         Plaintiff,<br><br>v.<br><br>LINCARE, INC.,<br><br>         Defendant. | Civil Action 7:09-CV-150 (HL) |

**ORDER**

This case is before the Court on Defendant's Motion for Summary Judgment (Doc. 25). The Motion has been fully briefed and is ripe for adjudication. After review of the briefs, evidence on record, and relevant case law, the Court grants Defendant's Motion.

**I.     FACTS**

Defendant Lincare, Inc. provides respiratory care and medical equipment to patients in their homes. (DSMF ¶ 1).[1] Plaintiff Amy Welch was hired by Lincare as a Sales Representative on June 14, 2007. (DSMF ¶ 3). Welch was promoted to Center Manager of Lincare's Moultrie, Georgia center on December 3, 2007. (DSMF ¶ 5).

---

[1]"DSMF" refers to Lincare's Statement of Material Facts To Which Defendant Contends There Is No Genuine Issue To Be Tried (Doc. 25-1). The cited paragraphs are those admitted by Welch in her response to the statement of facts.

The Center Manager position is governed by a written job description. The job description provides that, among many other things, the Center Manager may be required to perform equipment set-ups, and that the physical demands of the position include occasionally lifting or moving up to 100 pounds. (Doc. 25-6). Welch signed the job description for the Center Manager position upon assuming the post. (DSMF ¶ 9).

In September of 2008, Welch learned that she was pregnant. (DSMF ¶ 28). On September 19, 2008, due to minor complications, Welch made an unscheduled visit to her obstetrician, Dr. Sara Yarbrough. (DSMF ¶ 29). Welch was placed on bed rest over the weekend, and was scheduled to return to see Dr. Yarbrough on the following Monday, September 22. (DSMF ¶ 30).

During the follow-up visit, Welch told Dr. Yarbrough that on occasion, she delivered oxygen reservoirs and other equipment weighing in excess of 25 pounds to patients' homes. (DSMF ¶ 31). Dr. Yarbrough informed Welch she could not do that while pregnant, and released Welch to return to work with the following restrictions: no lifting/pulling in excess of 25 pounds; work week not to exceed 40 hours; no prolonged standing, sitting, or bending; periodic breaks; and no exposure to hazardous chemicals. (DSMF ¶¶ 32-33). Welch understood these restrictions to be mandatory. (DSMF ¶ 35).

Welch sent Dr. Yarbrough's note with the restrictions to Lincare Regional Administrative Assistant Joyce Perrone. (DSMF ¶ 36). Welch, whose due date was

in May, knew she was going to be subject to the restrictions for the next seven months of her pregnancy, and expected Lincare to abide by the restrictions and ensure she did not work outside of them. (DSMF ¶ 37).

When employees have non-work-related injuries and illnesses, including pregnancy, which result in work restrictions, it is Lincare's policy for management and Human Resources to review the restrictions to determine whether the employee can still perform the essential functions of the position. (DSMF ¶ 41). If it is determined the employee cannot perform the essential functions, the employee will be placed on leave. (DSMF ¶ 41). Employees at the Moultrie center are entitled to at most six weeks of medical leave under company policy. (DSMF ¶ 40). If at the end of the leave period, the employee's restrictions have not been lifted or modified so that the employee can perform the essential functions of the position, the employee is terminated. (DSMF ¶ 42). According to Paula Adams, a Lincare Human Resources Manager, an exception to this policy might occur if an employee had a medical certification stating that the employee would be able to resume normal duties within a few days of the end of the leave period. (Adams Dep., p. 12, Doc. 25-16). Sheila Dilley, another Human Resources Manager, testified that there had been situations where employees were allowed to modify their job duties as long as they still performed the essential requirements of their position. (Dilley Dep., p. 11, Doc. 25-17).

On September 23, 2008, Perrone sent Welch an email advising her that Human Resources needed to review Welch's medical restrictions against her job description. (DSMF ¶ 44). Welch was informed that "[n]ormally if you are on restricted duty and cannot perform your job according to your job description you will not be able to work." (DSMF ¶ 45). Human Resources reviewed Plaintiff's restrictions against the essential functions of her job description. (DSMF ¶ 46). Welch was subsequently informed that because her medical restrictions prohibited her from performing all of the essential functions of her position, i.e., lifting up to 100 pounds, she would be placed on six weeks of medical leave. (DSMF ¶ 47). Welch denies that she could not perform all of the essential functions of her job. According to Welch, she never had to move any equipment weighing over 25 pounds alone, and even with the lifting restriction, she could have continued to perform the day-to-day requirements of the Center Manager position. (Welch Dep., pp. 42-43, 55, 74, Doc. 27-1).

Because Welch wanted to return to the Center Manager position, she and her supervisor, Joshua Sale, agreed that Welch could return to that position provided that Dr. Yarbrough removed the restrictions that prohibited her from performing the essential functions of the job. (DSMF ¶ 50). Welch and Sale also discussed a transfer to an open Sales Representative position for the duration of her pregnancy, subject to Dr. Yarbrough approving the essential functions of that position without restrictions. (DSMF ¶ 51).

Welch provided copies of the job descriptions for the Center Manager and Sales Representative positions to Dr. Yarbrough. (DSMF ¶ 52). The doctor approved the Sales Representative job description without restrictions, but noted a 25-pound lifting restriction on the Center Manager job description. (DSMF ¶ 54; Welch Dep., Ex. 23, Doc. 25-11). Welch was subsequently moved into the Sales Representative position, and started in that position on October 6, 2008. (DSMF ¶ 60).

On October 17, 2008, Welch sent a letter to Sale, with a copy to Perrone, requesting reinstatement to the Center Manager position. (DSMF ¶ 62). She was never reinstated to that position. While she was out on medical leave, Welch began applying for other jobs. (DSMF ¶ 65). She received a job offer while still employed with Lincare, and resigned from Lincare effective November 6, 2008. (DSMF ¶ 66-67). It is undisputed that Lincare did not terminate Welch's employment. (DSMF ¶ 68).

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment must be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue to any material facts and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986).

When considering a motion for summary judgment, the Court must evaluate all of the evidence, together with any logical inferences, in the light most favorable to the nonmoving party. Id. at 254-55. The Court may not, however, make credibility determinations or weigh the evidence. Id. at 255.

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of a material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986) (internal quotation marks omitted). If the moving party meets this burden, the burden shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the moving party is not entitled to judgment as a matter of law. Id. at 324-26. If the evidence that the nonmovant presents, however, is "not significantly probative" or is "merely colorable," then summary judgment may be granted. Anderson, 477 U.S. at 249. This evidence must consist of more than mere conclusory allegations. See Avrigan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

## III. ANALYSIS

Welch asserts four claims in her complaint: (1) gender discrimination; (2) pregnancy discrimination; (3) intentional infliction of emotional distress; and (4) breach of contract. The Court will discuss each in turn.

### A. Gender Discrimination

Welch first contends that her removal from the Center Manager position constituted unlawful discrimination on the basis of gender. Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).

In a discrimination case, the plaintiff bears the burden of first establishing a prima facie case of discrimination. Welch relies on circumstantial evidence to support her claim of gender discrimination. To establish her prima facie case, Welch must show that: (1) she belongs to a protected class; (2) she was subjected to an adverse employment action; (3) her employer treated similarly situated employees outside her classification more favorably; and (4) she was qualified to do the job. Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997) (per curiam).[2]

Once the plaintiff establishes her prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the allegedly

---

[2] While there are other ways to establish a prima facie case of discrimination, Plaintiff has chosen to proceed under the similarly situated comparators analysis.

7

discriminatory action. Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1087 (11th Cir. 2004). Once the employer has provided a legitimate, non-discriminatory reason for the action, "the presumption of discrimination is rebutted, and the burden of production shifts to the plaintiff to offer evidence that the reason of the employer is pretext for illegal discrimination." Id.

To establish her prima facie case of gender discrimination, Welch must show, among other things, that Lincare treated similarly situated male employees more favorably. It is Welch's burden to establish that her comparators are "similarly situated in all relevant aspects." Holifield, 115 F.3d at 1562. The Eleventh Circuit has held that a "comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." Wilson, 376 F.3d at 1091.

A review of Welch's response to Lincare's motion shows that she has identified no male employees whom she claims were similarly situated to her. To support her claim, Welch first points to Paula Adams' testimony:

> Q: Are you aware of any circumstances where a non-FMLA employee was allowed to take more than the six weeks of leave?
>
> A: I can't cite specific names or situations, but I do - - I do know that if we have medical certification that indicates that the employee would be able to resume normal duties within a few days of the end of the six weeks of the leave that we would not proceed with termination and we would allow the employee to return.

(Doc. 25-16, p. 4).

8

The first problem with Welch's reliance on this testimony is that the testimony has no relevance to this case. This is not a matter where Welch asked for additional leave and was denied leave while others received it. The second problem is that Adams never actually says that exceptions were made to the policy or that specific employees were given additional leave. Her testimony reads more like a hypothetical than something that actually happened. The final, and most glaring problem, even assuming that Adams' testimony can be read to support the contention that exceptions to the leave policy were made, is that absolutely no information about these employees has been provided by Welch. The Court has no idea if they are male or female, what their positions with Lincare were, what their work restrictions were, what the duties of their positions were, or anything else about them upon which the Court can base a determination of whether they were similarly situated to Welch.

Welch next directs the Court to testimony from Sheila Dilley:

> Q: And are you aware of any situations where someone was allowed to modify their job so that they could come back within the six weeks? In other words, modify their job, you know, be placed on some light duty or modified duty?
>
> A: As long as it's within the essential requirements of the job.
>
> Q: So there have been some times when someone was allowed to modify tasks as long as they could do the essential requirements?

9

>           A:     Yes.

(Doc. 25-17, p. 6).

Welch points to Dilley's testimony as evidence of differential treatment. However, Welch again has provided no information about these alleged comparators. Without knowing in particular whether they are male or female, the Court has no way of determining if these employees are proper comparators.

To the Court's knowledge, the only male employee ever discussed in the record is Almon Moore. Welch does not specifically name him as a comparator in her response to Lincare's motion, but given the fact that he is referenced several times, the Court believes a closer examination of Moore is appropriate. According to Welch, Moore was placed on light duty as a result of cataract surgery. There is, however, a problem with Welch's testimony with regard to Moore - it is based on hearsay. When testifying about conversations she had with Angie Senn, another Lincare employee, Welch stated:

>           A:     One of my priorities when I was in the middle of all this was making sure that everything would continue at my center, as well as she also had a driver that was placed on light duty as a result of cataract surgery.
>
>           Q:     And what was the name of that driver?
>
>           A:     Almon Moore.
>
>           Q:     And is that something that Ms. Senn told you?
>
>           A:     Yes.

(Doc. 27-1, p. 5).

Welch's testimony shows that she has no personal knowledge of Moore's medical condition or any concessions made to him by Lincare.[3] The Court will not consider this hearsay in deciding Lincare's motion. In any event, even if the testimony is considered, there is not sufficient evidence in the record to establish that Moore is a proper comparator to Welch. The only evidence before the Court as to the two employees are their job titles and the general nature of their work, and that evidence shows that Welch and Moore are not similarly situated. Welch was a Center Manager, a supervisory position which involved mainly office work, but some physical activity. According to the Center Manager job description, Welch was responsible for supervising the other employees in her branch, hiring employees, making sales, and implementing safety programs. (Doc. 25-6). Moore, on the other hand, is a Customer Service Representative, which is a more formal title for a driver. His job involves what Welch calls "very manual" work, including maintaining the company van, stocking the van, making deliveries, cleaning the equipment, and maintaining the warehouse. (Doc. 27-1, p. 7). The differences in the employee's job titles and responsibilities make clear that they are not proper comparators for purposes of a gender discrimination claim.

---

[3] Lincare has provided evidence that there are no internal records showing that Moore was ever placed on light duty or had the essential functions of his position changed because of any cataract surgery. (Dilley Decl., ¶ 4; Doc. 25-20).

Finally, Welch directs the Court to her own deposition, wherein she testified about an employee named Brandy Lucas, also a Center Manager, who was allegedly allowed to work half days following cosmetic surgery. (Doc. 27-1, p. 4). Lucas is obviously not a proper comparator for purposes of a gender discrimination claim, as she and Welch are within the same protected class - female. *See* Holifield, 115 F.3d at 1562 (stating that the comparator must be shown by the plaintiff to be outside the plaintiff's protected class).

Because Welch has failed to identify a similarly situated comparator, Lincare is entitled to summary judgment on the gender discrimination claim in Count I. *See* Turlington v. Atlanta Gas Light Co., 135 F.3d 1428, 1433 (11th Cir. 1998) ("[S]ummary judgment against the plaintiff is appropriate if [s]he fails to satisfy any one of the elements in a prima facie case.")[4]

### B.  Pregnancy Discrimination

Welch next alleges that she was discriminated against on account of her pregnancy when she was removed from the Center Manager position. The Pregnancy Discrimination Act ("PDA") provides that an employer is not permitted to take an adverse employment action against an employee on the basis of her pregnancy. Under the PDA, "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes

---

[4]Lincare contends that Welch has not satisfied other prongs of the *prima facie* case, but as the Court has determined that Welch has not established the similarly situated prong, it is not necessary to address Lincare's other arguments.

. . . as other persons not so affected but similar in their ability or inability to work." 42 U.S.C. § 2000e(k).

For a pregnancy discrimination claim, the Court uses "the same type of analysis used in other Title VII sex discrimination suits." Armindo v. Padlocker, Inc., 209 F.3d 1319, 1320 (11th Cir. 2000) (per curiam). Like her gender discrimination claim, Welch relies on circumstantial evidence to establish her pregnancy discrimination claim.

To establish a prima facie case of pregnancy discrimination, Welch must show that (1) she is a member of a group protected by Title VII; (2) she was qualified for the position sought; (3) she suffered an adverse effect on her employment; and (4) she suffered from a differential application of work or disciplinary rules. Spivey v. Beverly Enters., Inc., 196 F.3d 1309, 1312 (11th Cir. 1999). It is important to note that the PDA does not require preferential treatment for pregnant employees. Id. "Instead, it mandates that employers treat pregnant employees the same as non-pregnant employees who are similarly situated with respect to their ability to work." Doe v. C.A.R.S. Protection Plus, Inc., 527 F.3d 35, 364 (3d Cir. 2008) (citation omitted).

The Court will address the fourth prong of the discrimination test first. The question is whether there were similarly situated non-pregnant employees who received better treatment than Welch did. To establish this prong, Welch again relies on the testimony of Paula Adams and Sheila Dilley. However, as previously

13

discussed, Welch has not provided any information about the employees referred to by Adams and Dilley, and there is not sufficient evidence in the record for the Court to determine whether any of the employees are similarly situated to Welch. The only other employee who warrants any further discussion is Brandy Lucas, the Center Manager who was allegedly allowed to work half days after having cosmetic surgery.

While Welch and Lucas were both Center Managers, that appears to be where their similarities end. What is important to remember is that Welch was a Center Manager with a 25-pound lifting restriction.[5] For purposes of her discrimination claim, Welch needs to show that Lincare treated a non-pregnant employee with a similar lifting restriction more favorably. Welch testified that she did not know if Lucas ever requested modified duty or had any work restrictions. Evidence from Lucas' supervisor shows that Lucas never had any restrictions on her ability to work. It is Welch's burden to produce evidence to establish that a similarly situated comparator was treated better than she was, and she has failed to do so.

As Welch has not established a prima facie case of pregnancy discrimination, Lincare is entitled to summary judgment in its favor on that claim.[6]

---

[5]While Welch contends that she could have performed her job even with the lifting restriction, the fact of the matter is she had a lifting restriction which she expected Lincare to abide by. The Court must take the restriction into consideration when analyzing Welch's discrimination claim.

[6]Again, it is unnecessary to address the other prong of the prima facie case since Welch has not established the fourth prong of the test.

## C. Intentional Infliction of Emotional Distress

Welch also brings a claim of intentional infliction of emotional distress. To recover on such a claim, a plaintiff must show evidence that: (1) the defendant's conduct was intentional or reckless; (2) the defendant's conduct was extreme and outrageous; (3) a causal connection existed between the wrongful conduct and the emotional distress; and (4) the emotional harm was severe. Abdul-Malik v. AirTran Airways, Inc., 297 Ga. App. 852, 855-56, 678 S.E.2d 555 (2009).

Extreme and outrageous conduct is that which is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. at 856 (quoting Biven Software v. Newman, 222 Ga. App. 112, 113-114(1), 473 S.E.2d 527 (1996)) (citation and punctuation omitted). "The rule of thumb in determining whether the conduct complained of was sufficiently extreme and outrageous is whether the recitation of the facts to an average member of the community would arouse her sentiment against the defendant so that she would exclaim, 'Outrageous!'" Wilcher v. Confederate Packaging, Inc., 287 Ga. App. 451, 453, 651 S.E.2d 790 (2007). "Whether actions rise to the level of extreme and outrageous conduct necessary to support a claim of intentional infliction of emotional distress is generally a question of law." Abdul-Malik, 297 Ga. App. at 856 (citing Yarbray v. Southern Bell Tel., etc. Co., 261 Ga. 703, 706(2), 409 S.E.2d 835 (1991)). "If the evidence shows that reasonable persons might find the presence of extreme and outrageous conduct and

15

resultingly severe emotional distress, the jury then must find the facts and make its own determination." Yarbray, 261 Ga. at 706.

Welch contends that a determination of whether Lincare's actions were outrageous is for the jury. The Court disagrees. In the Court's opinion, reasonable persons would not find Lincare's conduct towards Welch atrocious or intolerable. Georgia courts have repeatedly held that employment-related activities alone are insufficient to establish extreme and outrageous conduct. *See* Wilcher, 287 Ga. App. at 793 (assignment of arduous labor, obstruction of the employee's ability to do work, and making comments over the intercom did not rise to the level of outrageousness necessary for an intentional infliction claim); Miraliakbari v. Pennicooke, 254 Ga. App. 156, 159, 561 S.E.2d 483 (2002) (employer's refusal to allow employee to leave work or use telephone to care for child who broke his arm at school under the threat of losing her job dd not rise to the level of outrageousness necessary to support claim). Further, the termination of an employee generally is not extreme and outrageous conduct, no matter how stressful the termination is for the employee. *See* Clark v. Coats & Clark, Inc., 990 F.2d 1217, 1229 (11th Cir. 1993); Anderson v. Dunbar Armored, Inc., 678 F.Supp.2d 1280, 1331-32 (N.D. Ga. 2009) (termination of employee was not outrageous). While Welch was demoted, not terminated, the general rule still applies, and Welch has shown no reason for a departure from that rule.

As Welch has not presented evidence that Lincare engaged in extreme and outrageous conduct, Lincare is entitled to summary judgment on the intentional infliction of emotional distress claim.

### D. Breach of Contract

The final claim contained in Welch's complaint is one for breach of contract. Lincare moved for summary judgment on the breach claim, but Welch failed to respond to the motion as to that count.

As Welch did not address the breach of contract claim in her response, her claim is deemed abandoned. Road Sprinkler Fitters v. Indep. Sprinkler Corp., 10 F.3d 1563, 1568 (11th Cir.1994) (claims not addressed in response to summary judgment motion deemed abandoned). Lincare is entitled to summary judgment on Welch's breach of contract claim.

## IV. CONCLUSION

For the reasons discussed above, Lincare is entitled to summary judgment on Welch's gender discrimination, pregnancy discrimination, intentional infliction of emotional distress, and breach of contract claims. Lincare's Motion for Summary Judgment (Doc. 25) is granted. The Clerk of Court is directed to close this case.

**SO ORDERED**, this the 4th day of April, 2011.

*s/ Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

mbh